IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICIA THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-0348 |
| | § | |
| NATIONAL COLLECTOR'S MINT, | § | |
| INC., RANDY T. PERRY, and | § | |
| STRATUSCOM CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patricia Thomas ("Thomas" or "Plaintiff") sued Defendants National Collector's Mint, Inc. ("NCM"), Randy T. Perry ("Perry") (collectively "Defendants"), and StratusCom Corporation ("StratusCom") for a number of claims arising from NCM, Perry, and StratusCom's allegedly improper practices in selling Plaintiff more than a hundred expensive coins. Pending before the court is NCM and Perry's Motion to Dismiss Randy T. Perry and Compel Arbitration or, in the Alternative, to Dismiss for Failure to Plead Fraud With Particularity (Docket Entry No. 16) (hereinafter, "Defendants' Motion"). For the reasons stated below, Defendants' Motion will be granted in part and denied in part.[1]

---

[1]Defendants' Motion to Dismiss for Failure to Plead Fraud with Particularity (Docket Entry No. 16) is moot in light of Patricia Thomas's First Amended Complaint. See Patricia Thomas's First Amended Complaint ("Plaintiff's Amended Complaint"), Docket Entry No. 75.

## I.  <u>Factual Background</u>[2]

Plaintiff's claims arise from NCM, Perry, and StratusCom's allegedly predatory and abusive tactics in selling Plaintiff a series of expensive coins. Plaintiff filed suit against all three named defendants for alleged violations of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101-08, and the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm. Code § 17.14, _et seq._, and for common law fraud, fraud by non-disclosure, breach of informal fiduciary duty, and civil conspiracy. Plaintiff also sued NCM and StratusCom for negligent supervision.

Plaintiff is an elderly woman who suffers from debilitating rheumatoid arthritis and requires full-time care. NCM is a company that sells coins and collectibles. StratusCom provides marketing and telemarketing services to NCM. Perry is a telemarketer who works for NCM and whose job is to sell coins and collectibles on behalf of NCM. Plaintiff contacted NCM to inquire about purchasing coins after viewing one of NCM's advertisements. Perry was the sales representative assigned to her account.

---

[2]_See_ First Amended Complaint, Docket Entry No. 75, p. 4-10; Defendants' Motion, Docket Entry No. 16, pp. 6-12; Plaintiff's Response to Defendants' Motion to Dismiss Randy T. Perry and Compel Arbitration or, in the Alternative, to Dismiss for Failure to Plead Fraud with Particularity ("Plaintiff's Response"), Docket Entry No. 19, pp. 7-8. [All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.]

In the months after Plaintiff initiated contact with NCM, Plaintiff and Perry developed a "friendship" of sorts. Perry would call Plaintiff to check up on her. Plaintiff looked forward to Perry's calls because she lived alone and had a limited ability to leave home due to her illness. NCM's call logs show that during Perry and Plaintiff's four-year-plus relationship, Perry and other NCM representatives called Plaintiff over 700 times.[3] During his calls, Perry pitched and sold Plaintiff over a hundred coins. Plaintiff was not knowledgeable about the marketplace for coin trading, and she trusted Perry's assessment of how much the coins were worth and whether they were a good investment. In addition to regular calls initiated by Perry, NCM also sent Plaintiff advertisements about available coins.

In reliance on statements made by Perry during their telephone conversations and in NCM's promotional materials, Plaintiff spent over $1.6 million buying coins from NCM. Plaintiff alleges that she did not realize that the coins were sold to her for prices that often vastly exceeded their market values. Plaintiff points to numerous instances where NCM charged Plaintiff nearly double the fair market value of the coins she purchased.[4] As a result of NCM's markups, Plaintiff lost thousands of dollars and is now

---

[3]See Index of Calls Between NCM and Patricia Thomas, Exhibit 1 to Plaintiff's Sur-Reply to Defendants' Reply Memorandum in Further Support of Their Motion to Dismiss and Compel Arbitration, Docket Entry No. 44-1.

[4]See Plaintiff's Amended Complaint, Docket Entry No. 75, p. 9.

unable to resell the coins for what she paid for them to recoup the cost. Plaintiff claims that Defendants' advertising, sales calls, and correspondence with her falsely represented that they were selling her valuable, investment-grade coins at a fair price. Plaintiff seeks to recover damages for NCM, Perry, and StratusCom's allegedly unscrupulous business practices.

Defendants argue that the court lacks personal jurisdiction over Perry. Defendants also argue that this dispute must be submitted to arbitration because a binding mandatory arbitration agreement exists between Plaintiff and NCM. The alleged arbitration agreement ("the Agreement") appeared on NCM's website and on a packing slip sent with each of Plaintiff's purchases. The packing slip contained a section labeled **"IMPORTANT INFORMATION ABOUT YOUR ORDER!"** A subsection of this heading is titled **"RESOLUTION OF CLAIMS OR DISPUTES."** This subsection contained the following statement:

> THIS AGREEMENT STARTS WHEN YOU ACCEPT. You accept when you do any of the following things after an opportunity to review this agreement: give us a written or electronic signature; tell us orally or electronically that you accept; open or use a closed product (that says you are accepting by opening it); or not returning the product to us within ten days. IF YOU DO NOT WISH TO ACCEPT THESE TERMS, YOU MUST RETURN THE PRODUCT IN ITS ORIGINAL CONDITION WITHIN TEN DAYS AFTER RECEIPT.[5]

---

[5]See **MERCHANDISE RETURN LABEL [see RESOLUTION OF CLAIMS OR DISPUTES]**, Exhibit 3 to Plaintiff's Response, Docket Entry No. 19-1, p. 14 (emphasis in original). While each packing slip Plaintiff received contained an arbitration clause, the exact language used and extent of detail of its terms varied. A nearly
(continued...)

Recorded telephone calls between Plaintiff and NCM also show that Plaintiff was informed of (and consented to) NCM's "arbitration terms" over the telephone.[6] NCM operators told Plaintiff that they would follow up with a copy of the terms in writing, which they did by including a copy of the Agreement with each of Plaintiff's shipments. Plaintiff argues that the Agreement is unenforceable and contests Defendants' demand that this action be stayed pending arbitration to resolve the Parties' dispute.

## II. Defendants' Motion to Dismiss Randy T. Perry

Defendants argue that Perry must be dismissed because the court lacks personal jurisdiction over him. Plaintiff argues that the court has personal jurisdiction over Perry because his allegedly tortious contacts with Plaintiff in Texas suffice to establish the requisite minimum contacts between Perry and Texas.

----

[5](...continued)
identical delivery slip cited by Defendants allows 30 days, not ten, to return the product before keeping the product constitutes acceptance of the arbitration clause. See Delivery Slip, Exhibit A to the Declaration of Avram Freedberg in Support of Defendants' Motion ("Freedberg Declaration"), Docket Entry No. 16, p. 351. Some of the Delivery Slips cited by Defendants do not contain the above referenced language regarding acceptance. See Invoice and Order Registration Form, Exhibit C to Freedberg Declaration, Docket Entry No. 16, p. 356.

[6]When NCM's representatives told Plaintiff that she would receive a copy of the arbitration terms in writing on four occasions, she responded either "OK" or "Alright." See Defendants' Sur-Reply Memorandum in Response to Plaintiff's Sur-Reply Filed with Respect to Defendants' Motion to Dismiss and Compel Arbitration ("Defendants' Sur-Reply"), Docket Entry No. 54, pp. 6-8.

## A.    Standard of Review

Dismissal for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2).  When a foreign defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'"   Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 343 (5th Cir. 2002), cert. denied, 124 S. Ct. 66 (2003) (quoting Mink v. AAAA Development LLC, 190 F.3d 333, 335 (5th Cir. 1999)).  "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a prima facie case that personal jurisdiction is proper.'"   Id. (quoting Wilson v. Belin, 20 F.3d 644, 648 (5th Cir.), cert. denied, 115 S. Ct. 322 (1994)).  "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'"   Id. at 344 (quoting Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)).

The court must accept as true the uncontroverted allegations in the plaintiff's complaint and must resolve in favor of the plaintiff any factual conflicts.  Guidry v. United States Tobacco Co., Inc., 188 F.3d 619, 625 (5th Cir. 1999).  However, the court is not obligated to credit conclusory allegations, even if

-6-

uncontroverted. <u>Panda Brandywine Corp. v. Potomac Electric Power Co.</u>, 253 F.3d 865, 869 (5th Cir. 2001). "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law. . . ." <u>Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.</u>, 9 F.3d 415, 418 (5th Cir. 1993).

## B.    Applicable Law

The court may exercise personal jurisdiction over a nonresident defendant if "(1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." <u>McFadin v. Gerber</u>, 587 F.3d 753, 759 (5th Cir. 2009), <u>cert. denied</u>, 131 S. Ct. 68 (2010). Since the Texas long-arm statute extends as far as constitutional due process allows, the court considers only the second step of the inquiry. <u>Id.</u>

Exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" <u>International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement</u>, 66 S. Ct. 154, 158 (1945) (quoting <u>Milliken v. Meyer</u>, 61 S. Ct. 339, 343 (1940)). A plaintiff satisfying these two

requirements raises a presumption that exercise of jurisdiction over the defendant is reasonable, and the burden shifts to the defendants to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 105 S. Ct. 2174, 2185 (1985). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that [he] 'reasonably anticipate[d] being haled into court'" in the forum. McFadin, 587 F.3d at 759. "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001).

1. General Jurisdiction

A court may exercise general jurisdiction over non-resident defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). "Establishing general jurisdiction is 'difficult' and requires 'extensive contacts between a defendant and a forum.'" Sangha v. Navig8 ShipManagement Private Limited, 882 F.3d 96, 101-02 (5th Cir. 2018) (quoting Johnston v. Multidata Systems International Corp., 523 F.3d 602, 609 (5th Cir. 2008)). Vague allegations "that give no indication as to the extent, duration, or frequency of contacts are

-8-

insufficient to support general jurisdiction." <u>Johnston</u>, 523 F.3d at 610.

    2.   <u>Specific Jurisdiction</u>

A court may exercise specific jurisdiction when the alleged injuries arise from or are directly related to the non-resident defendant's contacts with the forum state. <u>Gundle Lining Construction Corp. v. Adams County Asphalt, Inc.</u>, 85 F.3d 201, 205 (5th Cir. 1996) (citing <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 104 S. Ct. 1868, 1872 n.8 (1984)); <u>Quick Technologies</u>, 313 F.3d at 344. To determine whether specific jurisdiction exists, the court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." <u>Gundle Lining</u>, 85 F.3d at 205. Even a single contact can support specific jurisdiction if the defendant "'purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" <u>Burger King</u>, 105 S. Ct. at 2183. "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." <u>Ruston Gas</u>, 9 F.3d at 419 (citing <u>World-Wide Volkswagen Corp. v. Woodson</u>, 100 S. Ct. 559, 567 (1980)).

There are three parts to a purposeful availment inquiry. First, only the defendant's contacts with the forum are relevant,

not the unilateral activity of the plaintiff or a third party.
Sangha, 882 F.3d at 103 (citing Walden v. Fiore, 134 S. Ct. 1115,
1122 (2014) ("We have consistently rejected attempts to satisfy the
defendant-focused 'minimum contacts' inquiry by demonstrating
contacts between the plaintiff (or third parties) and the forum
State.")). Second, the contacts relied upon must be purposeful
rather than random, fortuitous, or attenuated. Id. (citing Walden,
134 S. Ct. at 1123). Lastly, the defendant must seek some benefit,
advantage, or profit by availing itself of the jurisdiction.
Burger King, 105 S. Ct. at 2183.

A defendant may avoid being haled into court in a particular
forum by not conducting business there. See Moki Mac River
Expeditions v. Drugg, 221 S.W.3d 569, 575 (Tex. 2007) (citing
Burger King, 105 S. Ct. at 2181-85). Since specific jurisdiction
is claim specific, a plaintiff bringing multiple claims that arise
out of different contacts of the defendant with the forum must
establish specific personal jurisdiction for each claim. Seiferth
v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274 (5th Cir. 2006).

C.  **Analysis**

   1.  General Jurisdiction

Defendants argue that the court lacks general jurisdiction
over Perry because Perry lacks the requisite "continuous and
systematic" contacts with Texas. Perry resides in New York and has
no property or assets in Texas. Perry has never maintained a place

of business in Texas.  Perry has never sought the protections or benefits of Texas law in the Texas courts or otherwise.  Perry's only substantial contact with Texas is in his capacity as a sales representative of NCM, where he interacts with clients who live in Texas by telephone or e-mail.  Merely having clients in Texas and conducting business in Texas is not sufficient to establish the sort of continuous and systematic contacts required for general jurisdiction.  The court therefore concludes that Plaintiff has failed to allege facts that would support general jurisdiction.

    2.   <u>Specific Jurisdiction</u>

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  <u>Goodyear</u>, 131 S. Ct. at 2851 (citations and quotations omitted).  In assessing personal jurisdiction over an employee of a business, the employee's contacts with the forum are not to be judged according to their employer's activities there -- "[e]ach defendant's contacts with the forum State must be assessed individually."  <u>Calder v. Jones</u>, 104 S. Ct. 1482, 1487 (1984). Generally, a corporation will serve to insulate individual employees from a court's personal jurisdiction under the fiduciary shield doctrine.  <u>See</u> <u>Stuart v. Spademan</u>, 772 F.2d 1185, 1197 (5th Cir. 1985).  The fiduciary shield doctrine does not apply, however, if the individual employee's actions are motivated by fraud or

personal interest outside his corporate capacity.  See Lewis v.

Fresne, 252 F.3d 352, 359-60 (5th Cir. 2001).

> When a nonresident defendant commits a tort within
> the state, or an act outside the state that causes
> tortious injury within the state, that tortious conduct
> amounts to sufficient minimum contacts with the state by
> the defendant to constitutionally permit courts within
> that state, including federal courts, to exercise
> personal adjudicative jurisdiction over the tortfeasor
> and the causes of action arising from its offenses or
> quasi-offenses.  Even an act done outside the state that
> has consequences or effects within the state will suffice
> as a basis for jurisdiction in a suit arising from those
> consequences if the effects are seriously harmful and
> were intended or highly likely to follow from the
> nonresident defendant's conduct.

Guidry, 188 F.3d at 628 (internal citations omitted).

Purposeful availment exists if the actual content of

communications with a forum is the basis for an intentional tort

cause of action.  Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208,

213 (5th Cir. 1999).  In Brandt the Fifth Circuit held that a

defendant's letters, faxes, and telephone calls failing to disclose

material information directed at the plaintiff in Texas were

sufficient to give rise to specific personal jurisdiction over the

defendant when the plaintiff's causes of action were based on the

alleged misrepresentations.  Id. at 212-14.

Defendants argue that the court does not have specific

jurisdiction over Perry because "Perry's only contact with Texas in

relation to Plaintiff's claims were telephone and e-mail

communications from New York, made solely in the course and scope

of his employment in New York."[7] This case is analogous to <u>Brandt</u>. Plaintiff's claims against Defendants are based in part on Perry's alleged misrepresentations about the value of the coins he sold her. The Fifth Circuit found similar facts sufficient to support the exercise of specific personal jurisdiction over the defendant in <u>Brandt</u>. It is no defense that Plaintiff's residence in Texas is "fortuitous." As the court in <u>Brandt</u> noted, "[i]t may have been fortuitous, but the tortious nature of the directed activity constitutes purposeful availment" nonetheless. <u>Brandt</u>, 195 F.3d at 213.

Two cases cited by Defendants in which communications or negotiations with a resident of the forum state were held to be insufficient to subject the non-resident defendant to the court's jurisdiction did not involve intentional torts. <u>See</u> <u>Moncrief Oil International Inc. v. OAO Gazprom</u>, 481 F.3d 309 (5th Cir. 2007) (claims for breach of contract, promissory estoppel, and negligent misrepresentation based on a contract); <u>Holt Oil & Gas Corp. v. Harvey</u>, 801 F.2d 773 (5th Cir. 1986) (breach of contract and other related claims arising from failed oil and gas venture). The other case cited by Defendants, <u>Sinkin v. Pons</u>, Civil No. 13-871(RCL), 2014 WL 12488583 (W.D. Tex. Sept. 16, 2014), is distinguishable because the communications between the plaintiff and defendants in <u>Sinkin</u> were extremely limited -- the plaintiff and defendant only

---

[7] <u>See</u> Defendants' Motion, Docket Entry No. 16, p. 14.

shared two telephone conversations and one e-mail exchange in response to the plaintiff's unsolicited contact made from within the forum. Id. at *3. Perry's contacts with Plaintiff in Texas were far from limited -- Perry called Plaintiff in Texas repeatedly to solicit sales for a period spanning over four years and in the process sold Plaintiff over a hundred coins in over a hundred separate transactions. The court concludes that Perry has the requisite minimum contacts to be subject to specific jurisdiction in Texas.

In determining whether the exercise of personal jurisdiction over Perry would offend traditional notions of fair play and substantial justice, the court considers the burden on the Defendants, the interest of the forum state in adjudicating the dispute, and the interests of the Plaintiff. Johnston, 523 F.3d at 615. "The relationship between the defendant and the forum must be such that it is reasonable to require the defendant to defend the particular suit which is brought there." Guidry, 188 F.3d at 630. Plaintiff has alleged state law causes of action for common law fraud and violations of the DTPA. Texas has a strong interest in protecting its residents from deceptive practices by out-of-state salespersons. If Perry made material misrepresentations to Plaintiff, a Texas resident, regarding the value of the coins, Perry should reasonably expect that he might be subject to a Texas court's jurisdiction in a lawsuit based on those misrepresentations. Because Perry has the requisite minimum contacts with Texas and the

exercise of the court's jurisdiction over Perry does not offend traditional notions of fair play and substantial justice, Defendants' Motion seeking the dismissal of Perry will be denied.

### III.  **Defendants' Motion to Compel Arbitration**

Defendants allege that this action must be stayed pending arbitration because an enforceable arbitration agreement exists between Plaintiff and NCM.  Plaintiff argues that she never accepted the Agreement and that the Agreement is therefore unenforceable.  Plaintiff also argues that the Agreement is unconscionable.

### A.  **Standard of Review and Applicable Law**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 103 S. Ct. 927, 941 (1983) (citing Prima Paint Corp. v. Flood & Conklin Manufacturing Corp., 87 S. Ct. 1801 (1967)). "[W]hen a court interprets [ ] provisions in an agreement covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S. Ct. 1212, 1218 (1995) (quoting Volt Information Sciences, Inc. v. Board of

Trustees of Leland Stanford Junior University, 109 S. Ct. 1248, 1254 (1989)).

Section 2 of the FAA states that a written arbitration agreement in any contract involving interstate commerce is valid, irrevocable, and enforceable except on grounds that would permit the revocation of a contract in law or equity. 9 U.S.C. § 2. Section 3 of the FAA requires federal courts, on a party's motion, to stay litigation of claims subject to arbitration. 9 U.S.C. § 3. Section 4 of the FAA permits a party to seek an order compelling arbitration if the other party has failed to arbitrate under a written agreement. 9 U.S.C. § 4. Courts apply a two-step inquiry when ruling on a motion to compel arbitration. Edwards v. Doordash, Incorporated, 888 F.3d 378, 743 (5th Cir. 2018). "First, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement." Id.

## B. Analysis

To determine whether Defendants' request for an order compelling arbitration should be granted, the court must determine whether an enforceable agreement to arbitrate existed between the parties. Defendants argue that the Agreement is enforceable and that Plaintiff is therefore required to submit to arbitration. Plaintiff argues that the Agreement is unenforceable as an additional term to Plaintiff's original agreement to purchase coins

-16-

from NCM. Plaintiff also argues that the Agreement is invalid because she did not agree to arbitrate and that the Agreement is both substantively and procedurally unconscionable.[8]

1.  Enforceability of the Agreement

Agreements to arbitrate are contracts, and the ordinary rules regarding contract formation apply. First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1924 (1995); Fleetwood Enterprises, Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002). Under Texas law the elements of an enforceable contract are: (1) an offer; (2) an acceptance; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent that it become mutually binding on both parties; and (6) consideration. Coleman v. Reich, 417 S.W.3d 488, 491 (Tex. App. -- Houston [14th Dist.], no pet.).

Plaintiff argues that the Agreement is an unenforceable additional term contained in an acceptance of a contract between Plaintiff and NCM for the purchase of coins. The Texas Business and Commerce Code governs contracts for the sale of goods, such as the coins that Plaintiff purchased from NCM. Under § 2.207 of the Texas Business and Commerce Code additional terms in an acceptance of an offer where a party is not a merchant are to be construed as

---

[8]Plaintiff does not dispute that her claims fall within the scope of the Agreement if it is valid.

proposals for an addition to the contract. TEX. BUS. & COMM. CODE § 2.207. "If no answer is received [disagreeing or agreeing to the proposed additional terms] within a reasonable time after additional terms are proposed, it is both fair and commercially sound to assume that their inclusion has been assented to." Id. § 2.207 n.6. Acceptance can be made through conduct, such as by making continued purchases after learning of the proposed additional term. See Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enterprises, 625 S.W.2d 295, 300 (Tex. 1981).

Plaintiff cites the court's opinion in Enpro Systems, Ltd. v. Namasco Corp., 382 F. Supp. 2d 874 (S.D. Tex. 2005), in support of her argument that the Agreement is not part of a contract between Plaintiff and NCM. In Enpro the court concluded that a disclaimer of warranties on a delivery ticket or invoice contained in a shipment could not be included in the parties' contract under § 2.207 because the delivery ticket and invoice did not act as an acceptance. Id. at 882. The court noted that "[a]n enforceable contract existed before these documents could even have come to the attention of relevant Enpro employees." Id.

The court's opinion in Enpro does not apply in this case. A contract to buy and sell coins was formed when NCM shipped the coins to Plaintiff with a form detailing the terms of the parties' agreement and Plaintiff retained the coins for the period prescribed by the Agreement after having an opportunity to inspect the coins and NCM's terms. The Agreement was not an additional term, but a part of the parties' original contract.

While the Fifth Circuit has not addressed the enforceability of an arbitration agreement under similar facts, other circuits addressing so-called "return-or-accept" arbitration agreements have found them enforceable. In <u>Hill v. Gateway 2000, Inc.</u>, 105 F.3d 1147 (7th Cir. 1997), the court held that an arbitration agreement printed on a list of terms included in the box of a computer purchased by the plaintiffs was enforceable against the plaintiffs. <u>Id.</u> at 1148-51. The arbitration agreement instructed the plaintiffs to return the computer within 30 days if they did not accept either the product or the terms of the agreement. <u>Id.</u> at 1148. The court noted that it did not matter that the plaintiffs did not notice that the terms contained an agreement to arbitrate. <u>Id.</u> The court stated that the seller was not required to inform consumers of such agreements before they purchased a product. <u>Id.</u> at 1149.

In <u>Higgs v. Automotive Warranty Corp. of America</u>, 134 F. App'x 828 (6th Cir. 2005), the plaintiff responded to an advertisement for an automobile insurance warranty by sending a check and completing a "Warranty Group Registration Form." <u>Id.</u> at 829. The plaintiff later received a "Limited Warranty Service Contract" in the mail containing an arbitration clause. <u>Id.</u> The plaintiff was not required to sign the Limited Warranty Service Contract. <u>Id.</u> The Limited Warranty Service Contract contained a provision stating that if the plaintiff was not "completely satisfied" he could "return it within 10 days and [the defendant would] give [him] a full money back guarantee." <u>Id.</u> at 830. The Sixth Circuit, citing

-19-

Hill, held that "[k]eeping the warranty past ten days was sufficient to demonstrate agreement to the terms of the contract, including the arbitration clause." Id. at 832. The court also found it significant that the plaintiff had been given notice when completing his application that a service contract was forthcoming. Id.

In Norcia v. Samsung Telecommunications America, LLC, 845 F.3d 1279, 1281-90 (9th Cir.), cert. denied, 138 S. Ct. 203 (2017), however, the Ninth Circuit held that an arbitration agreement contained in the box of a cellular telephone purchased by the plaintiff was unenforceable in part because the plaintiff never had an opportunity to review the agreement before becoming bound by it. The plaintiff purchased a cellular telephone and left the box (and arbitration agreement contained within it) at the store and failed to review the paperwork contained in the box. Id. at 1282. The court noted that in-the-box contracts may be enforceable under certain circumstances, but not where the party to be bound did not have notice of the agreement. Id. at 1289. The court stated that "[w]here a notice on a package states that the user agrees to certain terms by opening the package, a court could reasonably conclude, consistent with California contract law, that the user has a duty to act in order to negate the conclusion that the consumer had accepted the terms in the notice." Id. at 1287.[9]

_____

[9]California contract law is substantially the same as Texas contract law. Cubria v. Uber Technologies, Inc., 242 F. Supp. 3d 541, 547 (W.D. Tex. 2017).

The Agreement is analogous to the arbitration agreements at issue in <u>Hill</u> and <u>Higgs</u>.  Like the plaintiffs in <u>Hill</u> and <u>Higgs</u>, Plaintiff was given an opportunity to return the coins she purchased to prevent herself from being bound by the Agreement after she had a chance to review its arbitration provision.  Like the plaintiff in <u>Higgs</u>, Plaintiff had notice that additional terms existed before making her purchase.  Recordings of telephone conversations between Plaintiff and representatives of NCM show both that Plaintiff was told of the arbitration terms and that Plaintiff verbally consented to such terms.[10]  The facts of this case are distinguishable from <u>Norcia</u>.  Plaintiff had notice of the terms contained in the Agreement and an opportunity to review it.  The Agreement's language gave Plaintiff an affirmative duty to act -- i.e., to return the product within a certain time frame or be bound by the Agreement's terms, which the <u>Norcia</u> court noted could reasonably result in a binding agreement.

Plaintiff also argues that she did not accept the Agreement because she failed to manifest her acceptance or communicate her acceptance to NCM.  An offeror can specify a particular mode of acceptance in its offer.  <u>Franklin Life Insurance Co. v. Winney</u>, 469 S.W.2d 21, 24 (Tex. Civ. App. -- San Antonio 1971, writ ref'd n.r.e.).  According to the language of the Agreement, Plaintiff

---

[10]During recorded phone conversations where an NCM operator told Plaintiff about the arbitration agreement, she either responded "OK" or "Alright."  <u>See</u> Declaration of Morgan Spina, Esq. in Connection with Defendants' Sur-Reply ("Spina Declaration"), attached to Defendants' Sur-Reply, Docket Entry No. 54, p. 15.

could accept in one of three ways: a written signature, orally or electronically consenting, or by keeping the product Plaintiff purchased for longer than the period of days specified in the Agreement. Not only does it appear that Plaintiff verbally agreed to the Agreement on several occasions during her telephone conversations with NCM operators, but Plaintiff also accepted under the terms of the Agreement by keeping dozens of coins for longer than the period stated in the Agreement after having an opportunity to review the Agreement. Plaintiff's acceptance resulted in the Agreement becoming an enforceable contract. The fact that Plaintiff may not have understood that she was agreeing to arbitrate any claims she had against NCM does not render the Agreement invalid.

        2.  Unconscionability

    An unconscionable agreement to arbitrate is unenforceable. In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 678 (Tex. 2006). There are two types of unconscionability: substantive and procedural. Procedural unconscionability "refers to the circum-stances surrounding the adoption of the arbitration provision" and substantive unconscionability "refers to the fairness of the arbitration provision itself." In re Halliburton Co., 80 S.W.3d 566, 571 (Tex. 2002). "[C]ourts **may** consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision." Id. at 572 (emphasis added).

Plaintiff argues that the Agreement was procedurally unconscionable because she did not have sufficient notice of the Agreement. A party to a contract cannot use unconscionability to negate a bargain because he was in a less advantageous bargaining position. Palm Harbor Homes, 195 S.W.3d at 679. A party's failure to read a contract or to understand its terms does not by itself make that contract unconscionable. The Agreement was printed on a packing slip for each order of coins under the bolded heading "IMPORTANT INFORMATION ABOUT YOUR ORDER!" Plaintiff had an opportunity to review the Agreement -- she placed over a hundred orders with NCM and filled out the packing slip containing the Agreement multiple times when making returns.[11] Recorded telephone conversations show that NCM representatives informed Plaintiff of the Agreement, and her responses manifested agreement on each occasion.[12] The evidence does not support Plaintiff's argument that

_____

[11]See Plaintiff's Response, Docket Entry No. 19, p. 8; Defendants' Motion, Docket Entry No. 16, p. 8; Invoice and Order Registration Form, Exhibit C to Freedberg Declaration, Docket Entry No. 16, p. 356; Invoice and Order Registration Form, Exhibit D to Freedberg Declaration, Docket Entry No. 16, p. 358.

[12]See Spina Declaration, attached to Defendants' Sur-Reply, Docket Entry No. 54, p. 15. While the exact words varied slightly on each occasion, the substance of the conversation Plaintiff had with an NCM operator during four recorded conversations was as follows:

Verifier: Your orders are 100% covered by our sixty-day, money-back guarantee for purchase price and arbitration terms. The complete guarantee and terms information we include on your invoice, which arrives with the coins, so that you have them with you there in writing, OK?

Plaintiff: Alright. . .

See id.

she did not have notice of, or agree to, the Agreement. Plaintiff had an opportunity to object to the Agreement by returning the coins within the period provided by the Agreement, but she failed to do so.

Plaintiff argues that the Agreement is substantively unconscionable because it requires her to waive the right to recover attorney's fees under the DTPA. "The test for substantive unconscionability is whether, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'" Palm Harbor Homes, 195 S.W.3d at 678. When parties agree to arbitrate statutory claims, "a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S. Ct. 3346, 3354 (1985). "[I]t would be unconscionable for an arbitration agreement to mandate arbitration of a statutory claim and at the same time eliminate the rights and remedies afforded by the statute." Venture Cotton Co-Op v. Freeman, 435 S.W.3d 222, 229 (Tex. 2014). To determine whether a restriction of statutory rights is permissible the court must analyze the underlying purpose of the statute. See In re Poly-America, L.P., 262 S.W.3d 337, 348 (Tex. 2008).

The DTPA's primary purposes are "to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." TEX. BUS. & COMM. CODE § 17.44(a). The DTPA's attorney's fees provision seeks to encourage consumers to bring their own complaints under the Act: "[The Legislature] provided for the recovery of attorney's fees under the Deceptive Trade Practices Act, as encouragement to <u>those abused</u> by certain proscribed conduct to avail <u>themselves</u> of the remedies of the Act." <u>First City Bank-Framers Branch, Texas v. Guex</u>, 677 S.W.2d 25, 30 (Tex. 1984) (emphasis added). Preventing a consumer from recovering attorney's fees would undermine the DTPA's goal of protecting consumers' ability to seek redress for conduct in violation of the DTPA. The DTPA provides that "[a]ny waiver by a consumer of the provisions of [the DTPA] is contrary to public policy and is unenforceable and void" unless the DTPA's requirements for a valid waiver are met. TEX. BUS. & COMM. CODE § 17.42(a). For a waiver to be valid under the DTPA it must, among other things, be "conspicuous and in bold-face type of at least 10 points in size" and be "identified by the heading 'Waiver of Consumer Rights,' or words of similar meaning." <u>Id.</u> at § 17.42(c)(1) and (2).

The Agreement applies to claims to enforce statutes such as the DTPA. The Agreement states: "You acknowledge and agree that each party shall pay the fees and costs of its own counsel, experts

-25-

and witnesses."[13] The right of a prevailing consumer-plaintiff to recovery of "reasonable and necessary" attorney's fees is guaranteed by the DTPA. TEX. BUS. & COM. CODE § 17.50(d). The Agreement does not contain a waiver meeting the requirements of the DTPA. Because the Agreement prohibits Plaintiff from recovering attorney's fees under the DTPA if she prevails, it is unconscionable.

However, "'[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement.'" Venture Cotton, 435 S.W.3d at 230. "In determining an agreement's essential purpose, the issue is 'whether or not parties would have entered into the agreement absent the unenforceable provisions.'" Id. In Venture Cotton the court concluded that rather than invalidating an entire arbitration agreement, the trial court should have severed the invalid waiver of DTPA remedies and allowed the rest of the arbitration agreement to stand. Id. at 230-31.

The essential purpose of the Agreement is to submit any disputes to an arbitral forum rather than a court. See Poly-America, 262 S.W.3d at 360. Eliminating an unconscionable restriction on remedies will not defeat this purpose. "In fact, the lifting of that illegal restriction enhances the ability of the arbitration provision to function fully and adequately under the

---

[13]See Invoice and Order Registration Form, Exhibit C to Freedberg Declaration, Docket Entry No. 16, p. 356.

law." Hadnot v. Bay, Ltd., 344 F.3d 474, 478 (5th Cir. 2003).
Neither party has presented evidence that NCM or Plaintiff would
not have entered into the Agreement absent the unenforceable
portion. The court concludes that the Agreement's restriction on
recovery of attorney's fees may be severed while preserving the
parties' choice of arbitration as the forum for resolving disputes.
See, e.g., Bonded Builders Home Warranty Association of Texas v.
Rockoff, 509 S.W.3d 523, 537 (Tex. App. -- El Paso 2016, no pet h.)
("[T]he arbitrator would be bound, as we would be, to follow
Venture Cotton Cooperative, strike the limitation on attorney's
fees, and sever it from the arbitration agreement."); Venture
Cotton, 435 S.W.3d at 230. Therefore, the court will sever the
attorney's fees limitation from the Agreement.

Because Defendants have shown both that a valid arbitration
agreement exists and that Plaintiff's claims fall within its scope,
Defendants' Motion to Compel arbitration will be granted. Perry
has consented to arbitrate this dispute,[14] and Plaintiff does not
object to Perry's consent. When all parties to an action are bound
by an arbitration agreement the court has discretion to dismiss it.
Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir.
1992). Because StratusCom has not consented to arbitration of

---

[14]See Correspondence from Defendants' Counsel, Exhibit 4 to
Plaintiff's Response, Docket Entry No. 19 ("For the convenience of
both you and your client, we are willing to hold the arbitration in
the Houston area."), p. 15.

Plaintiff's claims against it, the court will stay this action, instead of dismissing it, pending completion of the arbitration of Plaintiff's claims against NCM and Perry.

## IV. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss Randy T. Perry and Compel Arbitration or, in the Alternative, to Dismiss for Failure to Plead Fraud with Particularity (Docket Entry No. 16) is **GRANTED** in part and **DENIED** in part as follows:

Defendants' Motion to Dismiss Perry is **DENIED**.

Defendants' Motion to Compel Arbitration is **GRANTED**.

Defendants' Motion to Dismiss for Failure to Plead Fraud with Particularity is **MOOT** in light of Plaintiff's First Amended Complaint (Docket Entry No. 75).

The Agreement's limitation on Plaintiff's right to recover attorney's fees under the DTPA is **SEVERED** from the Agreement.

This action is **STAYED**. The parties will file a status report on February 8, 2019, and every 60 days thereafter.

**SIGNED** at Houston, Texas, on this 4th day of December, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE